**David F. Sugerman, OSB No: 86298**
David F. Sugerman Attorney, PC
707 SW Washington Street, Suite 600
Portland, Oregon 97205
Phone:  503-228-6474
Fax:  503-228-2556
E-Mail: david@davidsugerman.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CHRISTOPHER BRICKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC. a New Jersey corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>CLASS ACTION |

## CLASS ACTION COMPLAINT

Plaintiff Chris Bricker individually and on behalf of all others similarly situated, alleges the following against Volkswagen Group of America, Inc. ("Defendant" or "Volkswagen"). This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

**Page 1 – COMPLAINT AND DEMAND FOR JURY TRIAL**

## NATURE OF THE ACTION

1.      This class action concerns the intentional installation of "defeat devices" on over 482,000 diesel Volkswagen and Audi vehicles sold in the United States since 2009 ("Defeat Device Vehicles").  Defendant marketed those vehicles as environmentally-friendly cars that possessed extremely high fuel efficiency and performance, with very low emission, but Defendant did not actually make cars with those desirable and advertised attributes.

2.      According to the U.S. Environmental Protection Agency ("EPA"), Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles:  Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and My 2009-2015 Audi A3.  The California Air Resources Board is currently investigating whether the Defendant installed the device in other cars as well, so additional vehicle models and model hears may be added to this list when new facts are discovered.

3.      Instead of delivering on their promise of extremely high fuel mileage coupled with low emissions, Defendant devised a way to make it *appear* that their cars did what they said they would when, in fact, they did not.

4.      The defeat devices Defendant designed and installed work by switching on the full emissions control systems in Defendant's cars *only* when the car is undergoing periodic emissions testing.  The technology needed to control emissions from Defendant's cars to meet state and federal emissions regulations reduces their performance, limiting acceleration, torque, and fuel efficiency.

**Page 2 – COMPLAINT AND DEMAND FOR JURY TRIAL**

5.      To hide this, the defeat device simply shuts off most of the emissions control systems in the car once the car has completed its emissions test.  While that might have made the car more fun to drive, it resulted in Defendant's cars sending up to 40 times as much pollution into the environment as is allowed under the Clean Air Act and state regulations.

6.      Those violations are explained in a Notice of Violation the EPA issued to Defendant, as well as a letter from the California Air Resources Board ("CARB"), copies of which are attached to this Class Action Complaint as Exhibits A and B, respectively.

**PARTIES**

7.      Plaintiff Christopher Bricker is a citizen of Indiana.

8.      Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in every U.S. state and the District of Columbia, and is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171.  Volkswagen is therefore a citizen of New Jersey and Virginia. *See* 28 U.S.C. § 1332(d)(10).

9.      At all relevant times, Volkswagen manufactured, distributed, sold, leased, and warranted the Defeat Device Vehicles under the Volkswagen and Audi brand names throughout the nation.  Volkswagen and/or its agents designed the CleanDiesel engines and engine control systems in the Defeat Device Vehicles, including the "defeat device." Volkswagen also developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Defeat Device Vehicles.

**Page 3 – COMPLAINT AND DEMAND FOR JURY TRIAL**

## ANY OTHERWISE-APPLICABLE STATUTES OF
## LIMITATION ARE TOLLED

**A.      Discovery Rule Tolling**

10.      For the following reasons, any otherwise-applicable statutes of limitation have been tolled by the discovery rule with respect to all claims.

11.      Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiff and members of the proposed Class could not have discovered that Volkswagen was concealing and misrepresenting the true emissions levels of its vehicles, including but not limited to its use of defeat devices.

12.      As reported in the *New York Times* on September 19, 2015, the International Council on Clean Transportation, a research group, first noticed the difference between Volkswagen's emissions in testing laboratories and in normal use on the road.  The International Council on Clean Transportation brought the defeat device issue to the attention of the EPA.  The EPA, in turn, conducted further tests on the vehicles, and ultimately uncovered the unlawful use of the defeat device software.  Thus, Volkswagen's deception with respect to its CleanDiesel engines, engine control systems, and "defeat devices" was painstakingly concealed from consumers and regulators alike.

13.      Plaintiff and the other Class members could not reasonably discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen intentionally failed to report information within its knowledge to federal and state authorities, its dealerships, or consumers.

**Page 4 – COMPLAINT AND DEMAND FOR JURY TRIAL**

14.     Likewise, a reasonable and diligent investigation could not have disclosed that Volkswagen had information in its sole possession about the existence of its sophisticated emissions deception and that it concealed that information, which was discovered by Plaintiff immediately before this action was filed.  Plaintiff and other Class members could not have previously learned that Volkswagen valued profits over compliance with applicable federal and state emissions and consumer law.

**B.     Tolling Due to Fraudulent Concealment**

15.     Throughout the relevant time period, all applicable statutes of limitation have been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged in this Complaint.

16.     Instead of disclosing its emissions deception, or that the emissions from the Defeat Device Vehicles were far worse than represented, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

**C.     Estoppel**

17.     Volkswagen was under a continuous duty to disclose to Plaintiff and the other Class members the facts that it knew about the emissions from Defeat Device Vehicles, and of those vehicles' failure to comply with federal and state laws.

18.     Although it had the duty throughout the relevant period to disclose to Plaintiffs and Class members that it had engaged in the deception described in this Complaint, Volkswagen chose to evade federal and state emissions and clean air standards with respect to the Defeat Device Vehicles, and it intentionally misrepresented

**Page 5 – COMPLAINT AND DEMAND FOR JURY TRIAL**

its blatant and deceptive lack of compliance with state law regulating vehicle emissions and clean air.

19.     Thus, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## JURISDICTION AND VENUE

20.     This court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

21.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has caused harm to Class members residing in this District.

## FACTS

22.     Defendant intentionally designed and sold cars that misled consumers and regulators about the amount of pollution those cars created and the fuel efficiency they produced.  Despite touting themselves as an environmentally conscientious company that produced thoughtful cars for people who cared about the environment, Defendant sold expensive cars that produced pollution at orders of a magnitude above federal and state regulations, and then intentionally and knowingly hid the truth about those cars.

**A.     Defendant Touts their Diesel Vehicles as Being Fuel Efficient and Good for the Environment**

**Page 6 – COMPLAINT AND DEMAND FOR JURY TRIAL**

23.     For years, Volkswagen has advertised its diesel vehicles as low-emission, fuel-efficient cars.  Indeed, this marketing message is at the core of its image in the United States.  It has been a successful advertising campaign; Volkswagen has become the largest seller of diesel passenger vehicles in the United States.

24.     Defendant's success is based in large part on promoting their diesel cars as "clean" and "green" vehicles.  Indeed, being both highly efficient and "clean" are the centerpieces of Defendant's diesel engine marketing campaign.  "CleanDiesel" is in the very name of the vehicles about which Defendant lied.

25.     Defendant's apparent concern for the environment is evidence beyond just the model names and purported attributes of their vehicles.  For example, on the "Environment" page of its website, Volkswagen Group of America states that it takes "environmental responsibility very seriously.  When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."

26.     Defendant bolsters its apparent environmental bone fides by trumpeting the fact that the Audi A3 TDI and VW Jetta TDI were named in the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively.

27.     Defendant also launched a "Think Blue" program, which they explained is part of their policy of being "more responsible on the road and more environmentally conscious—not just in our cars."

**Page 7 – COMPLAINT AND DEMAND FOR JURY TRIAL**

28.     Beyond merely advertising, Defendant supported and directed a website to promote its "clean" diesel technology, www.clearlybetterdiesel.org, which says the technology reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner."

29.     Defendant goes so far as to use the tagline "Trust in Engineering" to promote its Audi brand.

30.     Unfortunately for consumers who bought Defendant's cars and for people who breathe the air into which Defendant's cars emit extraordinary amounts of pollutants, Defendants engineering was far from "truthful."  Defendant has designed and sold cars that emit pollutants at breath-taking levels, failing state and federal environmental regulations by incredible margins.

**B.     Volkswagen Intentionally Hid the Excessive and Illegal Levels of Pollution Emitted from its Cars**

31.     Contrary to Volkswagen's self-promotion as a "green" company, its diesel cars are unhealthy and unlawful.

32.     On September 18, 2015, the DEPA issued a Notice of Violation ("NOV"). The NOV explains that Defendant has installed sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant in the United States that detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test.  At all other times that the vehicle is running, however, the emissions controls are deactivated, meaning that pollution is freely released into the environment at

**Page 8 – COMPLAINT AND DEMAND FOR JURY TRIAL**

levels that exceed those allowed by federal and state clean air regulators.  This software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

33.    Most modern engines, including Volkswagen's "CleanDiesel" engines, use computerized engine control systems to monitor sensors throughout a car's engine and exhaust systems and control operation of the car's systems to ensure optimal performance and efficiency.  These functions can include controlling fuel injection, valve and ignition timing, and, as in Volkswagen's "CleanDiesel" engines, operating the engine's turbocharger.  The engine control computer can, for example, ensure that the air-to-fuel mixture is correct based on sensor readings such as throttle position, amount of air flowing into the engine, and engine temperature.

34.    These engine control computers also receive data from sensors in the car's exhaust system that measure the amounts of chemical substances included in the car's exhaust.  That data provides a measure of the engine's operation and efficiency, and is thus used by the engine control computer in operating the car's systems to ensure the desired performance and efficiency.

35.    Because modern cars include these sophisticated computers and sensors through the car's systems, emissions testing sometimes uses a car's existing sensors to measure the presence of pollutants and track compliance with EPA and state emissions standards.  Emissions testing stations plug a diagnostic device into the car's on-board diagnostics ("OBD II") port and use the car's exhaust sensors during the testing procedure to measure the substances emitted.  Some states, instead of or in addition to an

OBD II diagnostic device, use a measurement probe inserted into the car's exhaust pipe to measure the chemicals emitted.

36.    Volkswagen programmed the engine control computers in the Defeat Device Vehicles with software that detects when the cars are undergoing emissions testing, and then operates the car's engine and exhaust systems to ensure that emissions comply with EPA pollutant standards. When the car is not being emissions tested—that is, under the vast majority of operating conditions—the engine control systems operate the vehicle in a manner that does not comply with EPA emissions requirements.

37.    In short, this software allows Defendant's diesel vehicles to meet emissions standards in labs or state testing stations, while permitting the vehicles to emit nitrogen oxides (NOx) at *up to 40 times the standard* allowed under United States laws and regulations during the normal operation of the vehicles.

38.    NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter.  Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital.  Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects.  Children, the elderly, and people with pre-existing respiratory illness are at an acute risk of health effects from these pollutants.

39.    The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution.  Every vehicle sold

**Page 10 – COMPLAINT AND DEMAND FOR JURY TRIAL**

in the United States must be covered by an EPA-issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than were certified to the EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal laws.

**C.    Defendant Has Profited Handsomely From Their Diesel Vehicles**

40.    Defendant charges substantial premiums for the Defeat Device Vehicles. For example, for the 2015 Volkswagen Jetta, the base S Model with a gasoline engine has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640 a price premium of $2,860. The Clean Diesel premium for the highest trim Jetta models with a comparable gasoline engine is substantially higher: The Jetta SE has a starting MSRP of $20,095, while the Clean Diesel TDI SEL MSRP is $26,410, a 31% premium.

41.    These premiums occur across all of the vehicles in which Defendant installed its "defeat device" for emissions testing. The table below sets forth the price premium for each comparable base, mid-level, and top-line trim for each affected model:

### CleanDiesel Price Premiums

| Model | Base | Mid-level | Top-line |
|-------|------|-----------|----------|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |

**Page 11 – COMPLAINT AND DEMAND FOR JURY TRIAL**

| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

**D.      Volkswagen's Illegal Actions Have Caused Class Members Significant Harm.**

42.      Although the EPA has ordered Defendant to recall the Defeat Device Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation, purchasers of the Defeat Device Vehicles have and will continue to suffer significant harm.  First, Volkswagen will not be able to make the Defeat Device Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency.  As a result, even if Volkswagen is able to make Class members' Defeat Device Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.

43.      Second, this will necessarily result in a diminution in value of every Defeat Device Vehicle.  Not only did Class members pay too much for cars now worth substantially less, but they will end up paying more to fuel their less efficient cars over the years they own their vehicles.

44.      As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Defeat Device Vehicles emit 40 times the allowed levels, owners and/or lessees of the Defeat Device Vehicles have suffered losses in money and/or property.

**Page 12 – COMPLAINT AND DEMAND FOR JURY TRIAL**

45.     Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Defeat Device Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did. Moreover, when and if Volkswagen recalls the Defeat Device Vehicles and degrades the CleanDiesel engine performance in order to make the Defeat Device Vehicles compliant with EPA standards, Plaintiffs and Class members will be required to spend more on fuel and will not benefit from the performance qualities of their vehicles as advertised. Moreover, Defeat Device Vehicles will necessarily be worth less in the used market place because of their decrease in performance and efficiency, which means that owners of Defeat Device Vehicles will not be able to recoup nearly as much value in the future.

46.     Volkswagen's deliberate strategy to value profit over the truth, human health, and the environment, has caused serious harm to consumers nationwide.

47.     According to media sources, Defendant's CEO, Martin Winterkorn, said in a statement that he was "deeply sorry that we have broken the trust of our customers and the public," and that Defendant would be suspending sales of some 2015 and 2016 vehicles with 2.0 liter diesel engines.

## PLAINTIFF'S FACTS

48.     Plaintiff Christopher Bricker, a citizen of Indiana, purchased a 2014 Volkswagen Passat TDI S 275 in Indianapolis on September 12, 2014, spending over $36,000.

49.     Plaintiff Christopher Bricker also purchased a 2014 Volkswagen Jetta TDI SE in Indianapolis on June 28, 2014, spending over $30,000.

**Page 13 – COMPLAINT AND DEMAND FOR JURY TRIAL**

50.     Mr. Bricker drives over 50,000 miles a year so it was important to him to purchase high-performance, fuel efficient "clean diesel" cars. Indeed, Mr. Bricker prematurely terminated a lease on an SUV and lost money to purchase the Passat for these reasons.

51.     Both the Passat and the Jetta contained sales sticker window decals that promoted the "TDI clean diesel" feature of those vehicles and Mr. Bricker reviewed both of those decals and still possesses them.

52.     Given the importance of the cars' "clean" reputation, Mr. Bricker was disappointed to learn that Volkswagen installed a "defeat device" that artificially inflates the automobile's mileage while dramatically increasing its pollution.

53.     Mr. Bricker estimates that he paid more for the "clean" diesel than he would have paid for the similar gas model. Had he known that the vehicle included the defeat device, he would have paid less, and would probably not have purchased the Passat and Jetta at all.

54.     Mr. Bricker is upset that he bought a car that Defendant represented to him pollutes far less than it actually does. He believes the recall will lead to decreased performance, decreased mileage, and increased fuel costs over the life of his cars. It will also cause a diminution of the resale value of his vehicles.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

**Page 14 – COMPLAINT AND DEMAND FOR JURY TRIAL**

> All persons or entities in the United States who are current or former
> owners and/or lessees of a "Defeat Device Vehicle." Defeat Device
> Vehicles include, without limitation: Model Year ("MY") 2009-2015 VW
> Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-
> 2015 VW Passat; and MY 2009-2015 Audi A3.

Excluded from the Class are individuals who have personal injury claims resulting from

the "defeat device" in the CleanDiesel system. Also excluded from the Class are

Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to

be excluded from the Class; governmental entities; and the judge to whom this case is

assigned and his/her immediate family. Plaintiff reserves the right to revise the Class

definition based upon information learned through discovery.

    56.    Certification of Plaintiff's claims for class-wide treatment is appropriate

because Plaintiff can prove the elements of his claims on a class-wide basis using the

same evidence as would be used to prove those elements in individual actions alleging

the same claim.

    57.    This action has been brought and may be properly maintained on behalf of

the Class proposed herein under Federal Rule of Civil Procedure 23.

    58.    Numerosity: Federal Rule of Civil Procedure 23(a)(1).The members of the

Class are so numerous and geographically dispersed that individual joinder of all Class

members is impracticable. While Plaintiffs are informed and believe that there are not

less than hundreds of thousands of members of the Class, the precise number of Class

members is unknown to Plaintiffs, but may be ascertained from Volkswagen's records.

Class members may be notified of the pendency of this action by recognized, Court-

approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

59.     Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a) Whether Volkswagen engaged in the conduct alleged herein;

(b) Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Defeat Device Vehicles into the stream of commerce in the United States;

(c) Whether the CleanDiesel engine system in the Defeat Device Vehicles contains a defect in that it does not comply with EPA requirements;

(d) Whether the CleanDiesel engine systems in Defeat Device Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Defeat Device Vehicles;

(e) Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

(f) Whether Volkswagen designed, manufactured, marketed, and distributed Defeat Device Vehicles with a "defeat device";

(g) Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

**Page 16 – COMPLAINT AND DEMAND FOR JURY TRIAL**

(h) Whether Plaintiffs and the other Class members overpaid for their Defeat Device Vehicles;

(i) Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

(j) Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

60.     Typicality: Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

61.     Adequacy: Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

62.     Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2). Volkswagen has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

63.     Superiority: Federal Rule of Civil Procedure 23(b)(3). A class action is superior to any other available means for the fair and efficient adjudication of this

**Page 17 – COMPLAINT AND DEMAND FOR JURY TRIAL**

controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for members of the Class to individually seek redress for Volkswagen's wrongful conduct.

64.    Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

## CLAIMS ASSERTED ON BEHALF OF CLASS

### COUNT I
### Fraud by Concealment (Common Law)

65.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

66.    Plaintiff brings this claim on behalf of the Class.

67.    Volkswagen intentionally concealed and suppressed material facts concerning the quality and character of the Defeat Device Vehicles. As alleged in this Complaint, Volkswagen engaged in deception to evade federal and state vehicle

**Page 18 – COMPLAINT AND DEMAND FOR JURY TRIAL**

emissions standards by installing software designed to conceal its vehicles' emissions of the pollutants, which contributes to the creation of ozone and smog.

68.     The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Defendant's intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret deception resulted in noxious emissions from these vehicles at 40 times applicable standards.

69.     Plaintiff and Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiff and Class members did not, and could not, unravel Volkswagen's deception on their own.

70.     Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiff and Class members placed in its representations.

71.     Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its deception to regulators or consumers, including Plaintiff and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned

**Page 19 – COMPLAINT AND DEMAND FOR JURY TRIAL**

vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable laws and regulations.

72.     Volkswagen's false representations were material to consumers, both because they concerned the quality of the Defeat Device Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

73.     Volkswagen had a duty to disclose the emissions deception it engaged in with respect to the vehicles at issue because knowledge of the deception and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its deception, and because Volkswagen knew the facts were unknown to or reasonably discoverable by Plaintiff or Class members.

74.     Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions deception, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean

**Page 20 – COMPLAINT AND DEMAND FOR JURY TRIAL**

air law and emissions regulations, and its actual practices with respect to the vehicles at issue.

75.     Having volunteered to provide information to Plaintiff and the Class, Volkswagen had the duty to disclose the entire truth. These omitted and concealed facts were material because they directly affect the value of the Defeat Device Vehicles purchased or leased by Plaintiff and Class members. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiff and Class members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had thoroughly subverted the testing process.

76.     Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Class members.

77.     Volkswagen has still likely not made full and adequate disclosures, and continues to defraud Plaintiff and Class members by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions deception.

**Page 21 – COMPLAINT AND DEMAND FOR JURY TRIAL**

78.    Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Class members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Class members.

79.    Because of the concealment and/or suppression of the facts, Plaintiff and Class members have sustained damages because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiff and Class members been aware of Volkswagen's emissions deceptions with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

80.    The value of Plaintiff's and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Class

**Page 22 – COMPLAINT AND DEMAND FOR JURY TRIAL**

members' vehicles and made any reasonable consumer reluctant to purchase any of the Defeat Device Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

81.    Accordingly, Volkswagen is liable to Plaintiff and Class members for damages in an amount to be proven at trial.

82.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

83.    Plaintiff pleads this count pursuant to the law of Virginia, where Volkswagen has its American headquarters, on behalf of all members of the Class. As necessary, and in the alternative, Plaintiff may allege sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the laws of states other than Virginia.

## COUNT II
### Breach of Contract

84.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

85.    Plaintiff brings this Count on behalf of the Class.

**Page 23 – COMPLAINT AND DEMAND FOR JURY TRIAL**

86.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiff and the other Class members to make their purchases or leases of their Defeat Device Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased or leased these Defeat Device Vehicles, would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and the "defeat device." Accordingly, Plaintiff and the other Class members overpaid for their Defeat Device Vehicles and did not receive the benefit of their bargain.

87.    Each and every sale or lease of a Defeat Device Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the other Class members defective Defeat Device Vehicles and by misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design, including information known to Volkswagen rendering each Defeat Device Vehicle less safe and emissions compliant, and thus less valuable, than vehicles not equipped with CleanDiesel engine systems and "defeat devices."

88.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

**Page 24 – COMPLAINT AND DEMAND FOR JURY TRIAL**

## Breach of Express Warranty

89.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

90.    Plaintiffs bring a cause of action against Defendant for breach of express warranty on behalf of themselves and the Class.

91.    Defendant made numerous representations, descriptions, and promises to Plaintiff and Class members regarding the performance and emission controls of its diesel vehicles.

92.    Defendant, however, knew or should have known that its representations, descriptions, and promises were false. Defendant was aware that it had installed defeat devices in the vehicles it sold to Plaintiff and Class members.

93.    Plaintiff and Class members reasonably relied on Volkswagen's representations in purchasing "clean" diesel vehicles. Those vehicles, however, did not perform as was warranted. Unbeknownst to Plaintiff, those vehicles included devices that caused their emission reduction systems to perform at levels worse than advertised. Those devices are defects. Accordingly, Volkswagen breached its express warranty by providing a product containing defects that were never disclosed to the Plaintiff and Class members.

94.    As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiff and Class members suffered significant damages and seek the relief described below.

**Page 25 – COMPLAINT AND DEMAND FOR JURY TRIAL**

## COUNT IV

### Breach of Implied Warranty

95.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

96.     Plaintiff brings this cause of action against Volkswagen for breach of implied warranty on behalf of themselves and the Class.

97.     Volkswagen made numerous representations, descriptions, and promises to Plaintiffs and Class members regarding the functionality of Volkswagen's "clean" diesel technology.

98.     Plaintiffs and Class members reasonably relied on Volkswagen's representations in purchasing the Defeat Device vehicles.

99.     As set forth throughout this Complaint, Volkswagen knew that its representations, descriptions and promises regarding its diesel engines were false.

100.    When Plaintiff and Class members purchased Volkswagen's diesel vehicles, they did not conform to the promises or affirmations of fact made in Volkswagen's promotional materials, including that the vehicles were designed to meet the most demanding environmental standards. Instead, as alleged above, those vehicles were designed to cheat those standards, and the vehicles emitted far higher levels of pollution than promised.

101.    Accordingly, the Defeat Device Vehicles failed to conform to Volkswagen's implied warranty regarding their functionality.

**Page 26 – COMPLAINT AND DEMAND FOR JURY TRIAL**

102.    As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiff and Class members suffered significant injury when Volkswagen sold them cars that, it is now clear, are worth far less than the price Plaintiff and Class members paid for them. Accordingly, Plaintiff and the Class seek the relief described below.

**COUNT V**
**Magnuson-Moss Act (15 U.S.C. § 2301 *et seq.*) – Implied Warranty**

103.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

104.    Plaintiff asserts this cause of action on behalf of himself and the other members of the Class.

105.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 2301(3).

106.    Volkswagen's Defeat Device Vehicles are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

107.    Plaintiff and Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

108.    Volkswagen is a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).

109.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

**Page 27 – COMPLAINT AND DEMAND FOR JURY TRIAL**

110.    Volkswagen provided Plaintiff and Class members with "implied warranties," as that term is defined in 15 U.S.C. § 2301(7).

111.    Volkswagen has breached these implied warranties as described in more detail above. Without limitation, Volkswagen's Defeat Device vehicles are defective, as described above, which resulted in the problems and failures also described above.

112.    By Volkswagen's conduct as described herein, including Volkswagen's knowledge of the defects inherent in the vehicles and its action, and inaction, in the face of the knowledge, Volkswagen has failed to comply with its obligations under its written and implied promises, warranties, and representations.

113.    In its capacity as a warrantor, and by the conduct described herein, any attempts by Volkswagen to limit the implied warranties in a manner that would exclude coverage of the defective software and systems is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective the software and supporting systems is null and void.

114.    All jurisdictional prerequisites have been satisfied.

115.    Plaintiff and members of the Class are in privity with Volkswagen in that they purchased the software from Volkswagen or its agents.

116.    As a result of Volkswagen's breach of implied warranties, Plaintiff and the Nationwide Class members are entitled to revoke their acceptance of the vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. §2310.

**Page 28 – COMPLAINT AND DEMAND FOR JURY TRIAL**

## COUNT VI
## Unjust Enrichment

117.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

118.    Plaintiff brings this count on behalf of himself and, where applicable, the Class.

119.    Plaintiff and members of the Class conferred a benefit on Defendant by, *inter alia*, using (and paying for) its vehicles.

120.    Defendant has retained this benefit, and know of and appreciate this benefit.

121.    Defendant was and continues to be unjustly enriched at the expense of Plaintiffs and Class members.

122.    Defendant should be required to disgorge this unjust enrichment.


## STATE SPECIFIC CLAIMS

## COUNT VII

### Violation of the Indiana Deceptive Consumer Sales Act

123.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

124.    Plaintiff asserts this Count on behalf of the Indiana State members of the Class.

125.    This claims arises under the Indiana Deceptive Consumer Sales Act, Indiana Code § 24-5-0.5 *et seq.*

**Page 29 – COMPLAINT AND DEMAND FOR JURY TRIAL**

126.    Defendant made uniform representations that its diesel vehicles were of a particular standard, quality, performance, or grade when they were and are not, and that they would perform as represented when they did not, and, as set forth above, made false and/or misleading statements regarding the capacity and characteristics of Defeat Device vehicles that, as set forth above, were unfair or deceptive, had and continue to have the capacity to deceive the public, cause injury to Mr. Bricker and the Indiana Class and were made in violation of the Indiana Deceptive Consumer Sales Act, § 24-5-0.5-3(b)(1), (2),.

127.    Plaintiffs and Class members relied on Defendant's misrepresentations.

128.    Defendant's deceptive acts were done as part of a scheme, artifice, or device with intent to defraud or mislead and constitute incurable deceptive acts under Ind. Code § 24-5-0.5-1 *et seq.*

129.    Plaintiff and Indiana Class members are entitled to $1,000 or treble damages, reasonable attorneys' fees, costs of suit, an ordering enjoining Defendant's unlawful practices, and any other relief which the Court deems proper.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class respectfully requests that the Court enter judgment in his favor and against Volkswagen, as follows:

A. Certification of the proposed Class, including appointment of Plaintiff's counsel as Class Counsel;

B. An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

**Page 30 – COMPLAINT AND DEMAND FOR JURY TRIAL**

C. Injunctive relief in the form of a recall or free replacement program;

D. Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

E. Revocation of acceptance;

F. Damages under the Magnuson-Moss Warranty Act;

G. For treble and/or punitive damages as permitted by applicable laws;

H. An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

I. An award of costs and attorneys' fees; and

J. Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial.

Respectfully submitted this 21st day of September, 2015.


_____/s/_____

David F. Sugerman, OSB No: 86298
David F. Sugerman Attorney, PC
707 SW Washington Street, Suite 600
Portland, Oregon 97205
Phone:  503-228-6474
Fax:  503-228-2556
E-Mail: david@davidsugerman.com

Tim Alan Quenelle, OSB No. 93400
TIM QUENELLE, PC
4248 Galewood St
Lake Oswego, OR  97035
Telephone (503) 675-4330
Email: tim.quenelle@gmail.com


**Page 31 – COMPLAINT AND DEMAND FOR JURY TRIAL**

Irwin B. Levin
Richard E. Shevitz
Gabe A. Hawkins
Lynn A. Toops
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
Fax: (317) 636-2593
ilevin@cohenandmalad.com
rshevitz@cohenandmalad.com
ghawkins@cohenandmalad.com
ltoops@cohenandmalad.com

Counsel for Plaintiff and the Proposed Plaintiff Class